NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**MARCTEC, LLC,**

*Plaintiff-Appellant,*

v.

**JOHNSON & JOHNSON** AND **CORDIS CORPORATION,**

*Defendants-Appellees.*

---

2009-1457

---

Appeal from the United States District Court for the Southern District of Illinois in Case No. 07-CV-825, Chief Judge David R. Herndon.

---

Decided: August 4, 2010

---

GARRET A. LEACH, Kirkland & Ellis LLP, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were ROBERT G. KRUPKA and CHRISTOPHER R. LIRO.

GREGORY L. DISKANT, Patterson Belknap Webb & Tyler LLP, of New York, New York, argued for defendants-appellees. With him on the brief were EUGENE M.

GELERNTER, IRENA ROYZMAN and CHARLES D. HOFFMANN. Of counsel on the brief was MICHAEL J. TIMMONS, Johnson & Johnson, of New Brunswick, New Jersey.

---

Before NEWMAN, DYK, AND PROST, *Circuit Judges*.

NEWMAN, *Circuit Judge*.

MarcTec, LLC appeals the summary judgment of the United States District Court for the Southern District of Illinois, holding that U.S. Patents 7,128,753 ("the '753 patent") and 7,217,290 ("the '290 patent") are not infringed by the Cypher® stent of Johnson & Johnson and Cordis Corporation. The decision turned on the district court's construction of the term "bonded" in the asserted claims of both patents. We *affirm* this aspect of the district court's claim construction, and the judgment of non-infringement based on that construction.[1]

## DISCUSSION

The '753 and '290 patents have identical specifications and are directed to a surgical implant in which a polymeric material is bonded by heat to an expandable implant, where the polymer includes a therapeutic agent such as an antibiotic. Claim 1 is the broadest claim of the '753 patent:

> 1. A surgical device for implantation in a body comprising: an implant, at least a portion of which is expandable; and a polymeric material *bonded* to the implant, wherein the polymeric material is a thermoplastic, includes a therapeutic agent, is non-

---

[1] *MarcTec, LLC v. Johnson & Johnson*, 638 F. Supp. 2d 987 (S.D. Ill. 2009) (summary judgment order); *MarcTec, LLC v. Johnson & Johnson*, No. 07-cv-825-DRH, 2009 WL 910200 (S.D. Ill. Mar. 31, 2009) (claim construction order).

flowable and non-adherent at room temperature, and becomes flowable, tacky, and *adherent upon the application of heat.*

For the '290 patent, claim 1 is the broadest claim:

1. An implant for implantation in a human body comprising: a tubular member having a channel and mechanically expandable upon activation of a delivery mechanism from a contracted condition in which the tubular member has a first cross sectional size in a plane perpendicular to a longitudinal central axis of the tubular member to an expanded condition in which at least a portion of the tubular member has a second cross sectional size in a plane perpendicular to the longitudinal central axis of the tubular member, the second cross sectional size being larger than the first cross sectional size to thereby lock the tubular member against tissue in the human body; and a first component bonded to at least a portion of the tubular member and formed of *a heat bondable material* that includes a therapeutic agent selected from the group consisting of a tissue ingrowth promoter and an antibiotic, wherein the heat bondable material is non-flowable and non-adherent at room temperature and becomes flowable, tacky, and *adherent upon the application of heat.*

(Emphases added.) The claims of both patents all include the requirement of a polymeric material or heat bondable material bonded to an implant. Relying on the specification and the Applicants' arguments during prosecution, the district court construed "bonded" to mean "bonded by the application of heat."

The accused product is a drug-eluting stent having the brand name Cypher®, for implantation into patients with narrowed or blocked coronary arteries. This stent consists of an expandable, slotted metal tube that is bonded to a matrix comprised of two polymers, poly n-butyl methacrylate (PBMA) and polyethylene-co-vinyl acetate (PEVA), and a drug having the common name sirolimus, also known as rapamycin. During a portion of the manufacturing process called "solution casting," the polymers and the drug are dissolved in a volatile solvent and the resulting solution is sprayed onto the stents. The stents are then air-dried, allowing the solvent to evaporate and leaving the polymer/drug coating "bonded" to the stents. The solution casting process is performed at room temperature; no heat is applied. This is the basis for the judgment of non-infringement, for the district court construed the claims as requiring the application of heat. The district court explained:

> Heat bonding is the only form of bonding taught by the patent[s]. The specification defines "bondable material" as "any material, suitable for use in surgical applications, which can be softened and made flowable by the application of heat, and which, when softened, will become tacky and bond to other materials and will flow to fill available space."

*MarcTec*, 2009 WL 910200, at *11 (emphasis omitted).

MarcTec argues that the asserted claims do not require the use of heat, and that the doctrine of claim differentiation undermines the district court's construction, for dependent claim 8 of the '753 patent specifically describes the polymeric material as one that "is bonded to the implant by the application of heat." MarcTec observes that the district court's construction of "bonded" renders this claim superflu-

ous.  Perhaps it does.  However, as stated in *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998), "the doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence."

The specification's discussion of bonding, in the context of the invention, is uniformly directed to heat bonding.  The "Summary of the Invention" states that the components of the inventive assembly "are bond[ed] to each other by the application of heat."  '753 patent, col.1 ll.66-67, col.2 ll.4, 8, 15.  During prosecution of the patents, the Applicants limited the claimed "bonding" to heat bonding, in order to overcome the cited U.S. Patent 5,102,417 to Palmaz by arguing that: "In contrast [to Palmaz], Applicants' implant includes a heat bondable material which is bonded to an implant by the application of heat."  **[J.A. 5739.]**  To overcome the rejection based on Palmaz, and "[t]o highlight this distinction," the Applicants amended the claims to recite "a polymer material which is non-flowable and non-adherent at room temperature and becomes flowable, tacky, and adherent upon the application of heat."  **[J.A. 5739]**  MarcTec argues that the distinction from the Palmaz reference was not premised on the use of heat.  MarcTec states that the distinction was between "bonding" the material to an implant, as in Applicants' invention, and having the material "placed upon" the implant, as in Palmaz.  MarcTec states that the Applicants had no need to, and did not, distinguish Palmaz based on heat bonding because Palmaz lacks any teaching of bonding.  The district court found that the prosecution record shows heat bonding as a condition of patentability, and not merely a preferred method of bonding.  *See Honeywell Int'l, Inc. v. ITT Industries, Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (when a patentee consis-

tently describes a particular embodiment as his invention, "[t]he public is entitled to take the patentee at his word").

Limitations clearly adopted by the applicant during prosecution are not subject to negation during litigation, on the argument that the limitations were not really needed in order to overcome the reference. When an applicant yields claim scope in order to secure allowance of the patent, the public notice aspect of the record inhibits later retrenchment to recover what was yielded. *See Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005) ("[I]t frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid particular prior art. In such cases, we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to."). Prosecution history estoppel thus prevents MarcTec from recovering claim scope that includes bonding without the application of heat.

We affirm the district court's construction that "bonded" means bonded by the application of heat. Although MarcTec argues that heat is applied, it did not present evidence to avoid the grant of summary judgment. The district court's determination that no reasonable jury could find infringement, is affirmed.

**AFFIRMED**